UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.:

EITZEN CHEMICAL (Singapore) PTE, LTD.,

        Plaintiff,

v.

CARIB PETROLEUM, a foreign corp.,
CARIB PETROLEUM, INC., a Florida corp.,
and CARLOS H. GAMBOA, Individually,

        Defendants.

_____/

## COMPLAINT UNDER RULE 9(h)

Plaintiff, Eitzen Chemical (Singapore) Pte., Ltd., (hereinafter "Eitzen Chemical" or "Plaintiff"), by its attorneys, Hayden, Milliken & Boeringer, P.A., for its Complaint against Carib Petroleum, Carib Petroleum, Inc., (hereinafter collectively "Carib" or "Carib Defendants") and Carlos H. Gamboa (collectively the "Defendants"), alleges upon information and belief as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the recovery of demurrage, detention and other related damages pursuant to two charter parties involving the M/T GLEN and M/T SICHEM CHALLENGE (collectively the "Vessels"). As such, this action falls under this Court's Admiralty and Maritime Jurisdiction pursuant to 28 U.S.C.§ 1333(1).

2.     At all relevant times, Plaintiff, Eitzen Chemical, was and is a business entity duly organized and existing under the laws of a foreign country with an address at One Temasek

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

Avenue, #35-05 Millenia Tower, Singapore 039192.

3.      At all relevant times, the Vessels were technically operated and commercially managed by Eitzen Chemical (USA) LLC ("EC USA"), with an address at One Gorham Island, Westport, CT, 06880.

4.      Upon information and belief, at all relevant times, Defendant Carib Petroleum was a foreign entity, incorporated in 1986 by Defendant Carlos H. Gamboa in Panama to market oil products in the Caribbean, Central and South America region. Carib Petroleum maintains an address at Capital Business Center at 1110 Brickell Ave., Suite 430, Miami FL 33131, but is believed to have its principal place of business at 3169 Via Abitare #6, Miami, Florida 33133.

5.      At all relevant times, Defendant Carib Petroleum, Inc. was and still is a domestic business entity organized and existing under the laws of the State of Florida. Carib Petroleum, Inc. maintains an address at 1600 Ponce de Leon Boulevard, Suite 1201, Coral Gables, Florida 33134, and is believed to have its principal place of business at 3169 Via Abitare #6, Miami, Florida 33133. Carlos H. Gamboa is the resident agent for defendant Carib Petroleum Inc. at 3169 Via Abitare #6, Miami, Florida 33133.

6.      Carlos H. Gamboa filed for corporate status for Carib Petroleum, Inc. with the State of Florida on June 25, 2009. The officers and directors of the corporation are Carlos H. Gamboa, President, and Andrea H. Gamboa, Vice President, of 3169 Via Abitare #6, Miami, Florida 33133.

7.      Upon information and belief, Carlos Gamboa operates and controls the Carib Defendants from his address at 3169 Via Abitare #6, Miami. Florida 33133 either in his

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

individual capacity and/or as the president of Carib Petroleum Inc. and/or under the fictitious

entity Carib Petroleum. Further Carlos H. Gamboa is the alter ego of both of the Carib

Defendants, and has personally participated in the events giving rise to the retention of the vessel

in the Dominican Republic and the ensuing criminal investigation described more fully below.

### FIRST CAUSE OF ACTION AGAINST CARIB PETROLEUM, CARIB PETROLEUM, INC., and CARLOS H. GAMBOA

8.     Plaintiff reaffirms and realleges paragraphs one through seven as if fully set forth

herein and further alleges:

9.     The M/T GLEN is a commercial tanker, IMO Number 9311634, with a length of

127.2 meters, beam of 20.4 meters and deadweight of 12,956 mt. It was built in 2005 and is

flagged in Singapore.

10.     On or about December 9, 2009, Plaintiff, in the capacity of disponent owner of

the M/T GLEN, entered into a voyage charter party ("Contract #1") with Carib Petroleum Inc.,

and/or Carib Petroleum, based on a fixture recap, which incorporated the ASBATANKVOY C/P

form. (See GLEN fixture recap with Q.-88 vessel description attached thereto and the

ASBATANKVOY C/P form attached hereto as Exhibits 1 and 2, respectively).

11.     Pursuant to Contract #1, the GLEN was to load a cargo of about 5,000 metric tons

("mt") of "TECSOL" in Puerto Cabello, Venezuela, for discharge in Barahona, Dominican

Republic.

12.     From December 12, 2009 until December 15, 2009, the GLEN loaded 4,974 mt of

a cargo described as "TECSOL" at the OCAMAR Marine Terminal in Puerto Cabello,

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

Venezuela.  The supplier of this cargo was Tecnopetrol, C.A., a Venezuelan corporation. The Bill of Lading for this shipment stated that the Shipper was Tecnopetrol, C.A., and that the Consignee was Avalon Petrochemical, Inc., Barahona, Dominican Republic.

     13.    The vessel ullage reports (issued by Altol Petroleum Products Servica Dominicana, S.A. both before and after discharge) were dated December 24th and December 25, 2009 at Berth #6 Barahona, D.R., and reflected the dates the cargo was discharged at Barahona.

     14.    Pursuant to the terms and conditions of Contract #1, there remains an outstanding balance due for demurrage in the amount of USD $10,659.72, no part of which has been paid although duly demanded. A copy of the demurrage invoice dated 7 January 2010 is attached as Exhibit "3." Demurrage is provided for and due pursuant to Clause 8 of the ASBATANKVOY Charter Party form.

     WHEREFORE, Plaintiff demands judgment against the Carib Defendants and Carlos H. Gamboa for the above-described damages in the amount of $10,659.72, as well as for all interest, costs, fees and disbursements associated with the prosecution of the First Count in this cause of action, and any other relief which this Court may deem just and proper.

### SECOND CAUSE OF ACTION AGAINST CARIB PETROLEUM, CARIB PETROLEUM, INC. and CARLOS H. GAMBOA

     15.    Plaintiff reaffirms and realleges paragraphs one through seven as if fully set forth herein and further alleges:

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

16.     On June 21, 2010, Eitzen Chemical, as Owner, and Carib Petroleum, as Charterer, entered into a second voyage charter party for the M/T SICHEM CHALLENGE. ("Contract #2") A recap of that date reflects terms almost identical to those of the GLEN charter party, namely:

> Vessel: M/T SICHEM CHALLENGE commercial tanker (Built 1998, Singapore flag with a carrying capacity of 12, 180 mt).
> Charterers: Carib Petroleum.  Carlos Gamboa.
> Cargo: Intended cargo is TECSOL (Diesel without aromatics API about 33).
> Load: 1 Safe Port Puerto Cabello (Venezuela).
> Discharge: 1 Safe Port Barahona (Dominican Republic).
> Freight: Lump Sum USD $130,000.
> Demurrage: USD $10,000 per day pro rata.
> Laytime: 48 hours if 1 load / 1 disport.
> Laydays: June 23 - June 24, 2010 vsl is prompt off Puerto Cabello and to remain outside the port until cleared by charterers.
> C/P Form: ASBATANKVOY.
> Charterer's agents as load/disport(s) provided competitive fees.
> Broker: Southport Maritime, Inc.

(See fixture recap and attached form Q-88 for the charter of the M/T SICHEM CHALLENGE attached hereto as Exhibit "4").

17.     On June 19, 2010 the SICHEM CHALLENGE arrived off Puerto Cabello.

18.     On June 23, 2010, Carib Petroleum Inc. paid Owner USD 55,000 to maintain the charter party while making the necessary arrangements to have the vessel berth and load the intended cargo.

19.     On June 24, 2010, the Vessel tendered its Notice of Readiness to Charterer's agent, OCAMAR Agencia Naviera ("OCAMAR") at Puerto Cabello.

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

20.    Pursuant to the terms of this second fixture recap and the ASBATATNKVOY C/P form, Carib Petroleum was to load a cargo of TECSOL, estimated to be 5,000 mt at Puerto Cabello, and deliver this cargo to the Dominican Republic.  In turn, the SICHEM CHALLENGE was "to proceed as ordered to Loading Port(s) named… shall load from the factors of the Charterers… cargo… and deliver said cargo…" (see ASBATANKVOY C/P form, Exhibit 2, PART II Clause 1.)

21.    Clause 12 of the ASBATANKVOY C/P form further stated: "The vessel shall be free of charge for the use of any wharf, dock, place or mooring facility arranged by the charterers for the purpose of loading or discharging cargo…" (See Id. Cl. 12 "Dues-Taxes-Wharfage").

22.    On June 28, 2010 the DECLARATION DE CARGO was stamped by OCAMAR and the Master of the vessel, confirming that 5,266.80 mt of "TECSOL" was to be loaded on the SICHEM CHALLENGE.

23.    On June 29, 2010, the SICHEM CHALLENGE berthed at Terminal No. 42 and began loading cargo from trucks. On July 2, 2010, approximately 2,200 mt of TECSOL had been loaded from 74 trucks. Upon information and belief, as of said date Carib Petroleum had paid to Tecnopetrol, C.A. the supplier USD $500,000 for the cargo and also made a partial payment of funds to OCAMAR for port and loading costs.

24.    On or about July 2, 2010, the Venezuelan National Guard, acting on behalf of the Venezuelan Custom's Police, halted the loading of the cargo, seized the two trucks then on the pier and took control of the 2,200 mt which had been loaded, by officially "retaining" the vessel pursuant to a court order secured by the Federal Prosecutor's Office. (See copy of Order attached

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

hereto as Exhibit "5".)

25.     At about the same time, the Venezuelan National Guard took cargo samples from tanks 7 and 10 port and starboard for analysis by PDVSA, the national petroleum company of Venezuela.

26.     The Master and crew were not permitted to depart from the Vessel.

27.     On or about July 9, 2010, PDVSA issued a sample analysis concluding that the cargo was Venezuelan national product diesel and not a solvent as declared by the supplier, Tecnopetrol, C.A.

28.     Globalpandi, C.A., a Venezuelan entity which acted on behalf of the Vessel and its P&I insurance carrier, reported that the owner of Tecnopetrol, C.A., one Javier Alejandro Carrero Bertucci, had been charged with criminal conspiracy and aggravated smuggling of 5,000 mt of Venezuelan diesel oil, had certain of his assets frozen, and was under house arrest pending the completion of the criminal investigation by the Prosecutor's Office.

29.     On July 21, 2010, Jose Sabatino of Globalpandi reported that Ivan Sabatino, also of Globalpandi, attended the office of the National Guard and learned that the case had been remitted to the head Prosecutor's Office (No. 44) and that the ship was being detained as part of the investigation.

30.     On July 22, 2010, Jose Sabatino advised that the National Guard was recommending that the Prosecutor investigate Charterer Carib Petroleum's prior shipments. Carib Petroleum did not make itself available for the investigation.

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

31.     On July 23, 2010, Jose Sabatino further advised that a petition for Release of the Vessel had been filed by Globalpandi with the Prosecutor's Office.

32.     On July 26, 2010, Ty Shimada of EC USA urged Carib Petroleum, via Southport Maritime Inc. ("the Broker"), to retain a representative in Venezuela to formally approach the Prosecutor on Carib Petroleum's behalf.  There is no indication that Carib Petroleum complied with this request.

33.     On July 27, 2010, in response to questions from the Prosecutor, Shimada advised Jose Sabatino that this was the SICHEM CHALLENGE's first visit to Venezuela, but that Eitzen Chemical had chartered the M/T GLEN to Carib Petroleum in December, 2009, to load a cargo originating in Puerto Cabello, Venezuela.  On the same day, the Broker advised EC USA that the attorney representing Tecnopetrol was Dr. Luis Melendez. This information was passed on to Jose Sabatino.

34.     On July 28, 2010, Jose Sabatino advised EC USA that Dr. Melendez had filed a petition with the Prosecutor's Office requesting a second cargo sampling by PDVSA. The petition was granted by the Prosecutor.  At that time, the supplier, Tecnopetrol, was allegedly seeking the discharge of the cargo and release of the Vessel.

35.     On July 29, 2010 Carib Petroleum, via the Broker, advised EC USA that it was Carib's understanding that the Vessel's release would be considered only after analysis of the second sample. On the same day, EC USA requested Carib Petroleum's confirmation that EC USA would be paid all costs associated with the discharge of the mis-described cargo on board and the continuing accrual of demurrage.

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

36.     On August 2, 2010, Jose Sabatino advised EC USA that:

(a)  On July 6, 2010, Prosecutor No. 44 petitioned the court for "retention of the vessel."

(b)   On July 12, 2010, Judge of Control No. 1 by Communication No. C-11332110 informed the Port Captain and OCAMAR of its decision to "retain the vessel."

(c) On July 14, 2010, Dr. Melendez requested that the second cargo samples be used during the trial. This is a constitutional right of criminal defendants in Venezuela and is termed "anticipated proof."

(d) On July 31, assisting Prosecutor No 9 ordered OCAMAR to shift the vessel from the OCAMAR pier to anchorage and further ordered that the vessel "remain in that area until Court of Control No. 1 authorizes its departure by Communication No. 08-F9-0808-10."

(e)     Prosecutor No. 44 reported that they would not make recommendations regarding the discharge of the cargo or release of the vessel until the anticipated proof was obtained.

37.     On August 3, 2010, EC USA advised Carib, via the Broker, that they were holding Carib Petroleum responsible for all costs associated with the replenishment of fuel, fresh water and provisions as a result of the vessel's detention and the seizure of the cargo by Venezuelan authorities.

38.     On August 10, 2010, the Master advised EC USA that a thirteen person investigative team comprised of attorneys from the Prosecutor's Office, engineers from PDVSA and three individuals from the National Guard boarded the vessel to take a second set of samples from all eight of the loaded cargo tanks and to review the vessel's documents.  Samples of the vessel's fuel (MGO - Marine Gas Oil) were also taken.

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

39.      On August 12, 2010, Jose Sabatino confirmed to the Prosecutor's Office that the Vessel Owners were willing to pay, in the first instance, trucking costs of USD $67,460.93 which would be necessary to discharge the 2,200 mt of cargo on board.  Payment of these amounts was the legal obligation of Defendants.  Plaintiff did, however, make these payments in order to expedite the discharge of the cargo and release of the Vessel by the Venezuelan authorities. Defendants refused to make or reimburse Owner for these payments.

40.      On August 13, 2010, the vessel was given permission to shift back to the OCAMAR berth to receive fresh water and other necessaries as the Vessel's existing supply, of the various items, was virtually exhausted. On the same day, Jose Sabatino advised EC USA that Lt. Freddy Morales of the OCAMAR ship agency and who was also a member of the Venezuelan Navy informed him that Carib Petroleum, as Charterer, had only advanced part of the fees for the loading of the vessel, and that there was an outstanding amount of 30,000 Bolivers due and, further, that Carib had not replied to OCAMAR's request for payment.

41.      On August 16, 2010, Owners agreed to pay the then outstanding amount due to OCAMAR, i.e., the additional charges relating to the detained status of the vessel which totaled Bolivers 78,169.49 or USD $18,178.95 as well as another outstanding invoice for the use of a tugboat while berthing.  As in Paragraph 38, supra, Plaintiff made these payments to expedite the release of the Vessel.

42.      On August 20, 2010, Jose Sabatino advised EC USA that the Prosecutor's Office had issued written order(s) to OCAMAR, the Port Captain and Globalpandi, directing the Vessel to berth and discharge the cargo.

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

43.     On August 27, 2010, Jose Sabatino advised that the Vessel was at the OCAMAR berth discharging the cargo into trucks.  Discharge had commenced following an ullage survey by Captain Amarico Gomez of Consultek, Owner's appointed surveyor. The National Guard supervised the discharge, transportation and storage of the off loaded cargo with the Prosecutor in charge of the entire operation.

44.     On September 3, 2010, the cargo discharge was completed.

45.     On September 4, 2010, the Vessel departed Venezuela.

46.     As a result of the Caribe defendants having loaded a cargo of diesel oil which was misdescribed as TECSOL, it breached the terms of the recap/charter party and violated various Venezuelan laws and criminal codes.

47.     In addition to the USD 55,000 payment by Carib Petroleum Inc. towards freight (see para. 18, supra), Carib Petroleum Inc. also made three separate payments towards the delay damages namely:

- USD 50,000 on July 7, 2010;

- USD 50,000 on July 16, 2010;

- USD 50,000 on July 27, 2010.

48.     As a result of having to offload the 2,200 mt cargo which had been previously loaded at the OCOMAR facility in Puerto Cabello, the Owners suffered the following damages:

| | |
|---|---|
| a.  Balance of freight: | $75,000.00 |
| b.  Demurrage @ USD 10,000 pdpr | 72,833.33 |
| c.  Detention @ USD 11,000 pdpr | 682,814.00 |

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

(62D 18H 32M)

    d.   Port costs associated with:

        i)  Previously unpaid agent's fees
for the original loading:                     19,624.10

        ii)  Resupply of bunkers/fresh water
and discharge of slops:               16,000.00 (estimated)

        iii)  Discharge of the loaded cargo:   14,439.00

    e.   Additional bunkers consumed during
the detention period (July 2-Sept. 3, 2010):   135,341.51

    f.   Miscellaneous:

        i) Truck rental and associated
         transportation costs including
         hoses and shoreside personnel
         Expended during the discharge of
         the 2,200 mt (the original cargo):   USD 79,110.93

        ii) War Risk Insurance:          USD  5,742.00

        iii) Broker's Commissions:        USD 5,070.83

               Total:               1,105,975.60

Less: freight and demurrage payments made on account:    (205,000.00)

                    Net Due:    USD 900,975.60

49.     The Carib defendants have made no further payments though duly demanded.

50.     The sum of USD 900,975.60, as nearly as can be ascertained at this time, is the

legal obligation of the Carib defendants and of Carlos H. Gamboa.

*Eitzen Chemical v. Carib Petroleum et al.*
*Complaint*

WHEREFORE, Plaintiff demands judgment against the Carib Defendants and Carlos H.

Gamboa for the above-described damages, in the sum of at least USD 900,975.60, as well as for

other costs and damages which may be determined during the pendency of ths matter, plus all

costs, fees and disbursements associated with the prosecution of this cause of action and this

matter, as styled, and any other relief which this Court may deem just and proper.

Dated this 29th day of September, 2010.

HAYDEN MILLIKEN & BOERINGER P.A.

By:    *Patricia L McMillan Minoux*

Reginald M. Hayden, Jr., Esq.
Florida Bar No.: 097106
Patricia Leigh McMillan Minoux, Esq.
Florida Bar No.: 624543
2121 Ponce de Leon Blvd., Suite 730
Coral Gables, Florida 33134-5222
Telephone: (305) 662-1523
Facsimile: (305) 663-1358
Email: rhayden@hayden-milliken.com
Email: lmcmillan@hayden-milliken.com
*Attorneys for Eitzen Chemical (Singapore) Pte. Ltd.*

*H:\18505\Complaint\Complaint K-M 9-27-10.wpd*