UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23512-CIV-PAS

EITZEN CHEMICAL (SINGAPORE) PTE,
LTD., et al.,

    Plaintiffs,

v.

CARIB PETROLEUM, et al.,

    Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

This matter came before the Court on an informal discovery conference held before the undersigned on September 22, 2011 (DE # 88). The Honorable Patricia A. Seitz has referred all discovery in this case to the undersigned Magistrate Judge (DE ## 28, 32). The Court ruled on discovery matters at the conference, stating the reasons for the rulings on the record. This Order sets forth these rulings, summarizes the reasons for them stated at the conference, and incorporates by reference such reasons.

    I.    **Background:  Plaintiffs' Second Amended Complaint**

Plaintiffs' Second Amended Complaint is an admiralty and maritime claim seeking recovery of demurrage, detention and other related damages due to Defendants' breach of two charter party agreements (DE # 22 at 1-2). Plaintiffs, who own and operate the vessels M/T GLEN and M/T SICHEM CHALLENGE, allege that Defendants chartered the vessels pursuant to charter agreements calling for the transport of a liquid chemical known as TECSOL from Venezuela to the Dominican Republic when, in fact, Defendants intended and executed a plan to use the vessels to illegally smuggle diesel fuel out of Venezuela. Defendants' plan, however, was uncovered by Venezuelan authorities who detained one of the vessels (the M/T SICHEM CHALLENGE). Plaintiffs additionally allege

that the corporate Defendants are alter-egos of the individual Defendant, Carlos H. Gamboa, who uses the entities for his smuggling activities (DE # 22 at 2-4).

The Second Amended Complaint sets out three counts. Counts I and II allege breaches of contract (the charter parties) against the corporate Defendants for the product that was transported in the M/T GLEN and M/T SICHEM CHALLENGE, respectively (DE # 22 at 5-15). The liquid product contained in the M/T GLEN was loaded in Venezuela and discharged in the Dominican Republic (DE # 22 at 6), but the M/T SICHEM CHALLENGE was detained by Venezuelan authorities before leaving Venezuela (DE # 22 at 8-9). Tests by Venezuelan authorities allegedly confirmed that the product was Venezuelan diesel fuel, and they detained the vessel pursuant to a criminal investigation of the Venezuelan-based supplier (DE # 22 at 9). Investigation of prior charters of Defendants included testing of the product that had earlier reached the Dominican Republic via the M/T GLEN, which indicated diesel fuel transported by that vessel as well (DE # 22 at 10). The M/T SICHEM CHALLENGE was detained from approximately July 2, 2010, to September 4, 2010 (DE # 22 at 8, 13). Under Count I, Plaintiffs seek demurrage relating to the M/T GLEN totaling $10,659.72 (DE # 22 at 6) while, under Count II, Plaintiffs seeks a variety of damages due to the detention of the M/T SICHEM CHALLENGE and its allegedly illegal cargo totaling $900,975.60 (DE # 22 at 15).

Under Count III, Plaintiffs bring a cause of action for misuse of the corporate form against the individual Defendant, Carlos H. Gamboa (DE # 22 at 15-17). Specifically, Plaintiffs allege that Gamboa used his business entities for fraudulent and criminal purposes relating to the transport of unlawful cargoes (DE # 22 at 15). Count III seeks to hold Gamboa personally liable because he entered into the above-noted charter agreements with the intent to perpetuate a fraud. Furthermore, Defendant Gamboa

misused his entities in such a way that they served as his alter-egos, in an effort to avoid personal liability (DE # 22 at 16).

## II. Defendants' Request for Protective Order and Related Procedural History

According to Plaintiffs, in March and May 2011, they served subpoenas for non-party production upon Wachovia Bank (which was later acquired by Wells Fargo) to obtain banking records. Defendants did not object at the time to these subpoenas, the records were produced, and investigation of these records uncovered two prior alleged incidents of fuel smuggling by Defendants, which they had not disclosed (DE # 85 at 2). Because Defendants have produced few documents in response to discovery requests, these bank records provided the only basis for Plaintiffs to uncover these prior incidents (DE # 85 at 3-4, 4-5). Thereafter, on July 19, 2011, and August 22, 2011, defense counsel issued additional subpoenas for non-party production to Helm Bank USA ("Helm Bank") and Continental Bancorp. ("Continental"), respectively, to obtain additional bank records. Plaintiffs have sought bank records from these entities because the Wachovia/Wells Fargo records only go back to July 2009. In short, Plaintiffs assert that they have already uncovered two incidents of fuel smuggling through the Wachovia/Wells Fargo records, and seek to uncover additional incidents through the requested bank records from Helm Bank and Continental (DE # 85 at 5).

Additionally, Plaintiffs assert that the bank records may uncover evidence of the corporate entities serving as the alter-egos of Defendant Gamboa. In this respect, Plaintiffs point to deposition testimony of Gamboa that they argue reveals that one corporate entity held the bank accounts from which payments were drawn to operate another corporate Defendant, and to pay personal expenses of Defendant Gamboa (DE # 85 at 4).

Defendants deny any fraudulent or smuggling activities, and seek a protective order, arguing that the additional subpoenas for bank records breach Defendants'

3

legitimate expectation of privacy in financial institution records. Defendants further assert that Plaintiffs have not met their burden of showing any need for these records that overrides such privacy rights. In addition, the records are overbroad, irrelevant and unnecessary (DE # 84 at 2). In response to privacy concerns, Plaintiffs contend that they have repeatedly offered to enter into a confidentiality stipulation, but Defendants have not done so to date (DE # 85 at 5, 8). In response to the argument as to burden of proof, Plaintiffs assert that Defendants are obliged to demonstrate that production would be "harmful" (DE # 85 at 6).

Defendants initially sought a protective order on the basis of the subpoenas' untimeliness, reserving objections on the merits as well, because the subpoenas were served too late, given the Court's prior discovery deadline (DE # 74 at 2). The Court granted a protective order on this basis at a discovery conference held on August 31, 2011, but provided that, if the discovery deadline were extended, the Court, barring resolution by the parties, would entertain a hearing on the proper scope of the banking records sought. In its Order, the Court noted that if the documents were produced by third-parties in the interim, the documents would be sequestered by counsel for the Plaintiffs until resolution of the matter. The Court also ordered briefing on this matter prior to any subsequent hearing (DE # 74 at 2, 3). After the discovery deadline was extended and the parties could not resolve this issue, the Court set the matter for a hearing and briefing followed (DE # 78).

III.    <u>Analysis and Ruling</u>

Under Count III of Plaintiffs' Second Amended Complaint, Plaintiffs' claims involve allegations of fraudulent intent when entering into the charter parties in connection with improper use of the corporate form. The bank records reasonably could lead to admissible evidence on both contentions. With regard to fraud, the Wachovia/Wells Fargo bank records uncovered what Plaintiffs argue are prior incidents of alleged fuel

4

smuggling; earlier bank records could reveal additional occurrences. This is relevant because it presumably could show that Defendants have repeatedly employed charter agreements fraudulently to transport illegal cargoes. The determination of whether such evidence of other acts will be admissible at trial is not the relevant issue – that will be determined at trial after discovery is complete. The "other act" evidence is, however, discoverable. With regard to the corporate form, evidence of bank transactions could show whether Defendant Gamboa disregarded corporate form and employed the entities for his individual purposes.

Defendants have set forth several arguments in support of a protective order, including (a) that there is no evidence of any smuggling, so any related argument based on such evidence fails; (b) Plaintiffs have failed to make any alternative showing as to the relevancy of these documents; (c) the banks records fall outside the time period of the events of this case; and (d) Plaintiffs' have failed to demonstrate a need for the records that overcomes Plaintiffs' legally protected privacy expectations. As noted above, however, each of these arguments is unavailing. First, the undersigned notes that, upon a review of the record as a whole, Plaintiffs have set forth evidence of Defendants' alleged wrongful acts sufficient enough to warrant further relevant discovery. In this respect, review of bank records related to the time period before the incidents in question, but historically recent and limited in time, reasonably could lead to admissible evidence of a pattern of behavior. Furthermore, while not determinative of misuse of the corporate form, payments from or to the bank accounts in question could reasonably lead to admissible evidence regarding whether Defendant Gamboa adhered to legal requirements for maintaining the corporate form of the Defendant corporations. Finally, with regard to Defendants' privacy expectations, the undersigned finds that a stipulated confidentiality agreement, entered into by the parties, that restricts review of the banking records to "attorneys' eyes only" and those of necessary legal assistants,

5

would address these issues while providing Plaintiffs the discovery to which they are entitled. Counsel indicated that the parties had earlier exchanged a draft confidentiality agreement in which they could incorporate such language. In sum, as stated on the record at the hearing, the privacy concerns of the Defendants are outweighed by Plaintiffs' need for these records. Therefore, for the reasons stated at the hearing and summarized herein, it is hereby

**ORDERED AND ADJUDGED** that Defendants' request for protective order is **DENIED**. The banking records described in the body of this Order shall be released from sequestration and produced to Plaintiffs; the use of these records is restricted to this litigation; and, their contents shall not be disclosed to anyone other than counsel and necessary legal assistants, absent agreement of the parties or further order of the Court.

**DONE AND ORDERED** in Miami, Florida, on September 28, 2011.

_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**
The Honorable Patricia A. Seitz,
    U.S. District Judge
Counsel of Record