UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23512-CIV-SIMONTON

EITZEN CHEMICAL A/S, and
EITZEN CHEMICAL (SINGAPORE) PTE, LTD.,

       Plaintiffs,

v.

CARIB PETROLEUM, a Bahamian corp.,
CARIB PETROLEUM, INC., a Florida corp.,
and CARLOS H. GAMBOA, individually,

       Defendants.
_____/

## ORDER ON ADMISSIBILITY OF PLAINTIFFS' EXHIBITS 76 and 76A

During trial, the undersigned heard argument on the admissibility of both Plaintiffs' Exhibit 76 and Exhibit 76A (for purposes of this section, the "Exhibits"), pursuant to Federal Rules of Evidence 902 and 803 (DE # 191 at 44-83, 111-15, 152). Exhibit 76 purportedly contains the test results of the first test of the chemical composition of samples of cargo taken from the Sichem Challenge (the "First Test" or "First Test Results"). Exhibit 76A purportedly contains the test results of a second test of the chemical composition of cargo samples from the Sichem Challenge (the "Second Test" or "Second Test Results"). The parties have briefed the matter; Plaintiffs filed a related Memorandum of Law (DE # 195), Defendants filed a Response (DE # 202), and Plaintiffs filed a Reply (DE # 208). For the reasons stated below, the undersigned admits both Exhibits into evidence in the trial of this case.

    I.      PARTIES' POSITIONS

        A.    Plaintiffs' Position

Plaintiffs state that they offer Exhibit 76 for several reasons. First, they offer it into evidence to illustrate the reason cargo loading of the Sichem Challenge was halted, and the chronology of the criminal case prosecuted against the exporter/shipper, Mr.

Bertucci.  In addition, Plaintiffs offer the Exhibit to support their argument that the cargo's composition was consistent with Venezuelan "national diesel," purportedly illegal to export without a permit (DE # 195 at 2, 10).  Finally, Plaintiffs offer Exhibit 76 to support their claims that the halting of cargo loading was not their fault but was the fault of Defendants "and/or their customer or representative" (DE # 195 at 2).

With regard to Exhibit 76A, Plaintiffs note that the Second Test was performed in response to Mr. Bertucci's request to conduct a second test because he was not present at the First Test.  Plaintiffs argue that Second Test Results led to reinstatement of the criminal prosecution of Mr. Bertucci for smuggling Venezuelan national diesel (DE # 195 at 2-3, 18).

Plaintiffs argue that both Exhibits are public documents for purposes of Federal Rule of Evidence 902(3), which concerns self-authentication of certain foreign documents (DE # 195 at 10).  In support, Plaintiffs state that the First Test was conducted by PDVSA, the Venezuelan state-owned petroleum company, in one of its laboratories (DE # 195 at 10).  Plaintiffs state that PDVSA is legally authorized to test cargo due to its role of regulating oil exports (DE # 195 at 12).  In addition, Plaintiffs contend that the Second Test was ordered conducted by the Venezuelan Court for Oversight for the State of Carabobo, Puerto Cabello Extension.  The report contained in the Second Test Results, Plaintiffs continue, was authored by two chemists in the laboratory of the public university, Universidad de Carabobo, where the test was conducted (DE # 195 at 10-12).  Plaintiffs argue that the findings, which mention the presence of "aromatics," is critical to demonstrating Mr. Bertucci's wrongdoing (DE # 195 at 10-11).  Thus, Plaintiffs offer two options for deeming the Second Test Results a public document for purposes of Rule 902(3) – the report was generated by a public university and/or the report is part of a public criminal trial record (DE # 195 at 11).

Plaintiffs further argue that the Exhibits satisfy Rule 902(3) because each has been signed by the proper officials and received appropriate "final certification." Plaintiffs also note that the documents each received an "Apostille," which satisfies Rule 902(3)'s final certification requirement (DE # 195 at 13-15).

Thus, Plaintiffs argue that the requirements of Rule 902(3) have been satisfied. Next, Plaintiffs argue that the Exhibits also satisfy the requirements as an exception to the hearsay prohibition pursuant to Fed. R. Evid. 803(8), which concerns public records. In regard to Rule 803(8)'s requirements, Plaintiffs contend that both Exhibits are reports of government-owned entities (DE # 195 at 16). Moreover, Plaintiffs continue, the Exhibits are being offered as evidence in a civil trial (DE # 195 at 17). Finally, Plaintiffs assert that the reports are both the results of a legally authorized investigation (DE # 195 at 17). Specifically, with regard to Exhibit 76, Plaintiffs state that there is no dispute that PDVSA is legally authorized to regulate oil exports (DE # 195 at 17-18). Further, Plaintiffs continue, with regard to Exhibit 76A, the report was generated by a lab designated by a Venezuelan criminal court (DE # 195 at 18). At any rate, Plaintiffs conclude, Defendants have not challenged whether Exhibit 76A was the product of a legally authorized investigation (DE # 195 at 18).

Plaintiffs acknowledge that, pursuant to Rule 803(8), the Court considers the trustworthiness of the evidence being offered. Plaintiffs, however, argue that, against the factors considered by the Court, the Exhibits provide no indications of untrustworthiness (DE # 195 at 19). Specifically with regard to Exhibit 76, Plaintiffs contend that the test was conducted in a timely manner, by an engineer with expertise in the matter, with no predisposition of bias against the shipper, Mr. Bertucci (DE # 195 at 19). Plaintiffs dismiss Defendants' challenge to the trustworthiness of the test due to its purported non-admissibility in the current criminal trial against Mr. Bertucci; Plaintiffs state that the court's decision was based on a "procedural misstep" of the First Test, and

3

that the procedural safeguards for evidence admissibility in a criminal proceeding are stronger (DE # 195 at 20).[1]  Relatedly, Plaintiffs add, to the extent the Venezuelan court does not consider the results of the First Test due to a legal procedural error, such error does not discredit the validity of the results (DE # 208 at 2-3).

With regard to Exhibit 76A, Plaintiffs argue that the testimony of Mr. Sabatino, a Venezuelan lawyer hired by the insurance company to protect the interests of Eitzen, demonstrates that the test results correspond to samples taken from the Sichem Challenge (DE # 208 at 4).  Plaintiffs further argue that no factor suggests the untrustworthiness of the Exhibit; the report was generated in a timely manner, or, alternatively, there is no evidence that any delay would affect the test results (DE # 195 at 23).  As for Plaintiffs' alleged failure to meet the deadlines set forth by the Court with regard to experts, Plaintiffs argue that such facts are irrelevant since Plaintiffs seek to admit the report as a self-authenticating public record, as opposed to through an expert as an expert report (DE # 208 at 3-4).  Finally, Plaintiffs assert, no argument can be made that the chemists and/or the university had any motivational bias against Mr. Bertucci (DE # 195 at 23).

Therefore, Plaintiffs conclude that the Exhibits are self-authenticating pursuant to Rule 902(3), and are exceptions to the prohibition against hearsay pursuant to Rule 803(8) (DE # 195 at 23).

B.  **Defendants' Position**

Defendants generally challenge the reliability and, thus, the trustworthiness of the Exhibits (DE # 202 at 1).  Defendants refute Plaintiffs' assertion that the tests verify that Mr. Bertucci was smuggling Venezuelan national diesel (DE # 202 at 3).  They further

---

[1] **Plaintiffs later, however, back away from any assumption that the First Test Results have been nullified, noting that the evidence in the record, as set forth in the testimony of Mr. Sabatino, is that the legal significance of the First Test in the current criminal proceedings is uncertain (DE # 208 at 2).**

emphasize that Exhibit 76 "was expressly nullified by the Court in Venezuela" and, that the Exhibit has not been admitted in the current criminal proceedings.   Accordingly, Defendants contend, Exhibit 76 does not form the basis of the criminal trial against Mr. Bertucci.  Thus, because the First Test was "nullified," the investigation that resulted in the First Test Results was not legally authorized (DE # 202 at 2-3).

Specifically with regard to Exhibit 76A, Defendants argue that it was not timely disclosed because the disclosure of the report (and any related expert with the report) did not meet the Court's deadlines with regard to experts.  Thus, Defendants conclude, the report should not be admitted into evidence because it would be unfair, prejudicial, and inconsistent with the Court's earlier rulings (DE # 202 at 3-4).  Moreover, Defendants challenge whether Exhibit 76A was prepared by a government agency, since it was prepared by a chemist in a local university.  Finally, Plaintiffs assert that the report contained in Exhibit 76A does not demonstrate that the test results correspond to samples taken from the Sichem Challenge, which are at issue in this case (DE # 202 at 4).

Defendants assert other assorted arguments.  With regard to Rule 902(3), Defendants contend that no competent evidence has been offered to demonstrate that either Exhibit was prepared by an authorized government official (DE # 202 at 2).  In addition, Defendants claim that, as evidence of the chronology of events in Venezuela, the test results are cumulative evidence because other testimony and evidence establishes the timeline of events (DE # 202 at 3).

At the hearing on January 31, 2013, however, Plaintiffs stated that if the Court admitted Exhibit 76, then Exhibit 76A should also be admitted by the Court (DE # 222 at 40).[2]

---

[2]   Despite this concession, and the fact that the undersigned has determined that Exhibit 76 is admissible, the undersigned has independently analyzed the admissibility of Exhibit 76A since, if the admission of Exhibit 76 is later determined to be erroneous, the Defendants' objection to Exhibit 76A would stand.

II.     **FACTS REGARDING THE TESTS OF THE CARGO**

The First Test was conducted by PDVSA, a governmental entity, in a PDVSA laboratory (DE # 191 at 44, 45, 78).  The report was issued on July 2, 2010 (DE # 191 at 44).

The Second Test was conducted after Mr. Bertucci's lawyer in Venezuela complained that Mr. Bertucci was not present for the First Test.  His lawyer requested and was granted a second test (DE # 191 at 56-57).  The Second Test was conducted in October 2011 (DE # 191 at 54).  The criminal court in Venezuela ordered the Second Test to be conducted in a laboratory at the public university in Carabobo, Venezuela (DE # 191 at 56-58, 78).  The Second Test Results are evidence in Mr. Bertucci's pending criminal trial in Venezuela (DE # 191).

Defense counsel was made aware of the Second Test during Mr. Sabatino's deposition at the end of January 2012 (DE # 191 at 53-54).  Sometime in January or February 2012, Mr. Sabatino began making requests to the criminal court to try to obtain a copy of the Second Test Results (DE # 191 at 54, 112).  Mr. Sabatino ultimately received a copy of them near the end of March 2012 (DE # 191 at 55, 78).  Then, Mr. Sabatino notified Plaintiffs' counsel that he received the Second Test Results and sought to have the document Apostilled in Venezuela (DE # 191 at 55, 112).  The Apostille is dated April 26, 2012 (DE # 191 at 152).  The Apostille process took until the end of April, and Mr. Sabatino sent the documents to Plaintiffs' counsel on May 12, 2012 (DE # 191 at 55, 152).  The Second Test Results were received from Venezuela on May 12, 2012.  It was sent out by Plaintiffs' counsel for a translation and then provided to opposing counsel on June 5, 2012 (DE # 191 at 50).

Although the Second Test, as noted above, was ordered to be conducted in connection with the criminal proceedings against Mr. Bertucci, the legal significance of

the First Test Results is unclear.  The parties have not presented any evidence that the First Test will not be considered by the court in the criminal current proceedings; Mr. Sabatino is not certain whether the Second Test renders the First Test null and void, as Defendants contend (DE # 191 at 76-77).  No expert testimony has been presented to interpret the scientific or legal significance (under Venezuelan law) of either set of test results.

    III.    <u>LEGAL STANDARDS AND ANALYSIS</u>

    A.    <u>Fed. R. Evid. 902(3)</u>

    Federal Rule of Evidence 902(3) provides:

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

….

(3)  Foreign Public Documents.  A document that purports to be signed or attested by a person who is authorized by a foreign country's law to do so. The document must be accompanied by a final certification that certifies the genuineness of the signature and official position of the signer or attester – or of any foreign official whose certificate of genuineness relates to the signature or attestation or is in a chain of certificates of genuineness relating to the signature or attestation….

With regard to the scope of Rule 902(3), a range of documents are considered "foreign public documents."  Notably, "public" documents include those filed with or in the custody of a government agency, regardless whether the document was generated by a public or private party.  *See United States v. Doyle*, 130 F.3d 523, 545 (2d Cir. 1997).

    As for Rule 902(3)'s requirements, the Rule sets forth two.  First, "there must be some indication that the *document* is what [it] purports to be.  Thus, the proffered document must be executed by a proper official in his official capacity, or the genuineness of the document must be attested to by a proper official in his official capacity."  *United States v. Deverso*, 518 F.3d 1250, 1256 (11th Cir. 2008) (emphasis in original), *quoting United States v. Squillacote*, 221 F.3d 542, 562 (4th Cir. 2000).  The first

requirement is not concerned with the truth of the matter asserted in the document; the requirement focuses on whether the document, itself, is what it purports to be. *Deverso*, 518 F.3d at 1256, *citing Doyle*, 130 F.3d at 545. Furthermore,

> The provision's use of the word "purport" suggests that the official nature of the signature and the authority of the signer normally should be judged based on the face of the document. Thus, this requirement should be satisfied where the document refers to the signer's office or title, states that it is signed on behalf of his governmental agency, or otherwise conveys the sense that it was signed in an official capacity. On the other hand, the court may receive additional evidence as to whether this signature is satisfied....

31 Charles Alan Wright et al., *Federal Practice & Procedure Evid.* § 7137 (1st ed. 2012). The second requirement is that "there must be some indication that the *official* vouching for the document is who he purports to be." *Deverso*, 518 F.3d at 1256 (emphasis in original), *citing Squillacote*, 221 F.3d at 562.

At the outset, the undersigned finds that Rule 902(3) applies to the two sets of test results at issue because the two sets of test results are foreign public documents for purposes of this Rule. With regard to the First Test Results, as detailed further below, they were purportedly generated and signed by an official of a public agency, specifically, the general manager of a chemical laboratory under the management of PDVSA, Venezuela's state-owned petroleum company. Neither Plaintiffs nor Defendants contest the public designation of the First Test Results. With regard to the Second Test Results, they were obtained (by Jose Sabatino) from a Venezuelan criminal court as a record of that court (DE # 191 at 54-55, 78, 112). Defendants' primary argument with respect to the public designation of the Second Test Results concerns whether the "document [was] prepared by a government agency" (DE # 202 at 4). As noted above, however, the author of the document is immaterial to its public nature. Moreover, Defendants have not contested that a Venezuelan criminal court produced the second

8

set of test results to Mr. Sabatino in response to his formal request for them.  Therefore, the undersigned finds that the two sets of test results fall within the scope of Rule 902(3).

Next, the undersigned turns to whether Rule 902(3)'s requirements have been satisfied with regard to both sets of test results.  Considering the two requirements in reverse order, with regard to the test results' "final certification," the undersigned notes that none of the parties contest that the two sets of test results at issue have undergone the "Apostille" process in Venezuela to verify their veracity.[3]  Defendants have not raised any issue with regard to the Apostille satisfying the second requirement of Rule 902(3), nor any other infirmity of the documents' certification.  Therefore, the undersigned considers the second requirement satisfied with regard to the two sets of test results.

Thus, the analysis turns to the first requirement of Rule 902(3) with regard to each set of test results.  Defendants' principal arguments, however, concern whether the test results accurately reflect the composition of the cargo at issue in this case, i.e., the truth of the matter asserted through the test results, and the credibility of such results.  As stated above, however, such concerns do not fall within Rule 902(3)'s first requirement.

---

[3] Plaintiffs make reference to final certification having been satisfied by the "Apostille" obtained, citing the Hague Convention of 5 October 1961 Abolishing the Requirement of Legalisation for Foreign Public Documents (the "Apostille Convention") (DE # 195 at 7).  An Apostille is "a certificate that authenticates the origin of a public document."  The Apostille Convention allows certification of a public document in one country that is a signatory to the Convention, for use in another country who is a signatory to the Convention.  A country generally will only make a document eligible for an Apostille if that country considers the document to be a public document.  An Apostille only certifies the authenticity of the signature or authority that signed the document; it does not certify the content of the document.  Hague Conference on Private International Law Permanent Bureau, *The ABCs of Apostilles:  How to ensure that your public documents will be recognized abroad, available at*  http://www.hcch.net/upload/abc12e.pdf.   The United States and Venezuela both appear to be signatories of the Convention.  Hague Conference on Private International Law, *HCCH I Status Table, available at* http://www.hcch.net/index_en.php?act=conventions.status&cid=41 .  Rule 902(3)'s second requirement, i.e. "final certification," can be satisfied through the Apostille process.  *See United States v. Vidrio-Osuna*, 198 Fed. App'x 582, 583 (9th Cir. 2006); Wright et al., *supra*, at n.21.

Instead, with regard to the First Test Results, the question is whether there is "some indication" that the document proffered as the first set of test results by PDVSA are, indeed, the first set of test results carried out by PDVSA's laboratory. *See Deverso,* 518 F.3d at 1256. The undersigned notes that the first page of the test results is signed by Jesus Sanchez, identified as the General Manager of the El Palito Refinery. As indicated by the heading on that same first page, El Palito is an industrial laboratory of PDVSA. Although the organizational structure is uncertain, additional public authority listed in the letter's heading suggests that El Palito falls within a regional administration system within Venezuela's Ministry of Energy and Petroleum. Mr. Sanchez makes reference to testing of cargo samples taken from the "SICHEN CHALLENGE [sic]" in his laboratory on July 2, 2010. The remaining pages of the test results are consistent with the information described above. Thus, there is more than "some indication" that this document is signed by the proper official in his official capacity.

Defendants assert that "[n]o competent evidence has been proffered showing that either Exhibit 76 or 76A was prepared by an authorized official of a government agency" (DE # 202 at 2). Defendants, however, misconstrue the nature of Rule 902(3). As evidenced by the Rule's wording (i.e., a "document that purports to be signed…by a person who is authorized…to do so"), and as acknowledged by the commentators noted above, the Rule is not designed to conclusively determine the authority of a particular government official. Moreover, as detailed above, the document at issue describes the official capacity of the signatory. Defendants have presented no evidence that Mr. Sanchez was not authorized to make his statement. At most, the sum of the Defendants' argument amounts to an assertion that the official was not authorized because the First Test Results have been declared null and void, and, thus, Rule 902(3)'s first requirement has not been satisfied. Despite Defendants' repeated assertions, however, and even Plaintiffs' occasional conflicting references as to whether the test has been declared null

and void, the record contains no evidence either (a) that Mr. Sanchez had not been authorized by his agency to carry out the test, or (b) that the first test has been deemed null and void.  At most, Mr. Sabatino has acknowledged that the Venezuelan criminal court granted Mr. Bertucci the Second Test because he was not present at the First Test. Accordingly, the undersigned is left with the presumption of the "purported" authority of the official and, therefore, finds that Rule 902(3) has been satisfied with regard to the First Test Results at issue.

 As noted above, Defendants also contend with regard to the Second Test Results that no competent evidence has been presented regarding whether the document was prepared by an authorized government official.  Defendants, however, have taken no issue with respect to the authority of any official of the criminal court to prepare the second set of test results at issue.  Instead, as noted above, Defendants challenge whether a chemist employed by a local university may be considered to have prepared the document on behalf of a government agency.  This consideration, however, is irrelevant to the criminal court's preparing and attesting to the test results provided to Mr. Sabatino.  Additionally, Defendants argue that there is no indication in the document that the test results correspond to samples taken from the Sichem Challenge (DE # 202 at 4).  This argument, however, is unavailing.  While the report, itself, does not specifically identify the Sichem Challenge, upon a review of Exhibit 76A as a whole, the document clearly is referencing testing of the cargo at issue.  The expert report makes reference to the test being carried out at the direction of the Criminal Court for Oversight of the State of Carabobo, in connection with Case No. GP11-P-2010-000924, and makes further reference to the samples having been taken from tanks on the premises of Tecnopetrol. Moreover, the Uniform Bank Statement signed by Mr. Sabatino contained in Exhibit 76A makes reference to the same case number, and that it concerns the transport of Tecsol to be shipped aboard the Sichem Challenge, and further makes reference in connection

11

therewith to the report contained in Exhibit 76A.  Thus, to the extent that Defendants' objection is considered a challenge as to whether the test results are what they purport to be, Defendants have offered no evidence to contest authentication pursuant to Rule 902(3).  Finding that Defendants have raised no other objection with regard to Exhibit 76A's satisfaction of Rule 902(3)'s requirements, the undersigned finds that the Second Test Results satisfy both of Rule 902(3)'s requirements.

### B.    Fed. R. Evid. 803(8)

The analysis of the admissibility of Exhibits 76 and 76A, however, do not end upon a determination of self-authentication.  The test results are not automatically admissible, simply because they satisfy Rule 902(3).  While the test results are self-authenticating, as hearsay materials they must still meet an exception to the prohibition against hearsay.  *Doyle*, 130 F.3d at 545.

In this instance, Plaintiffs seek to qualify the test results as an exception pursuant to Federal Rule of Evidence 803(8), which also concerns public records (DE # 195 at 16).  Rule 803(8) states in pertinent part:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> ….
>
> (8) Public Records.  A record or statement of a public office if:  (A)  it sets out…in a civil case…, factual findings from a legally authorized investigation; and (B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

With regard to trustworthiness, the focus of inquiry is on whether the method by which a report was prepared is reliable.  Courts have distinguished this determination from a report's credibility, which can still be left to the fact finder, even upon a finding of reliability.  *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991).  Rule 803(8), however, assumes admissibility; the burden is on the opposing party to prove a

report's untrustworthiness.  *Id.* (citing supportive decisions from the Fourth, Sixth and Eighth Circuits).

First, with regard to the First Test Results, Defendants attack whether the investigation of the cargo was legally authorized.  Defendants state,

> Notwithstanding the Venezuelan court order [that] expressly nullified [E]xhibit 76 as being in contravention to Venezuelan law, Plaintiffs nevertheless suggest that [E]xhibit 76 is the result of a legally authorized investigation.  If the document was legally authorized, as suggested by Plaintiff[s'] counsel, there would [be] no basis for the Venezuelan court to nullify it.

(DE # 202 at 2-3).  As noted above, however, there is no record evidence that Exhibit 76 has been "nullified" by the Venezuelan court, or any testimony as to the legal effect of "nullified" test results as a piece of evidence in a Venezuelan criminal proceeding.  Thus, Defendants' argument that the factual findings are not the result of a legally authorized investigation because the test has, since, been nullified is unpersuasive.  Instead, the investigation of the cargo at issue would reasonably appear to flow from the power of the Venezuelan government, as acknowledged by both Plaintiffs and Defendants, to arrest cargo loading and investigate cargo pursuant to the state's sovereign power to regulate its exports.

Defendants also argue that "the circumstances associated with these documents show that they lack the necessary indicia of reliability to make them trustworthy and hence admissible" (DE # 202 at 1).  Although Defendants do not identify further the specific bases upon which they challenge the First Test Results' trustworthiness, presumably, their argument is based on a similar argument as to the alleged nullity of PDVSA's initial test.  As noted above, however, the Court starts with a presumption of admissibility, and leaves the burden of identifying indicia of unreliability to Defendants. Having not further presented any facts as to the unreliability of the report, the presumption has not been overcome.  Again, there is no record evidence as to the legal

standing of the First Test Results in light of the Second Test that was ordered.  Included in this uncertainty is whether a Second Test was ordered due to a discredited scientific method of the First Test, or simply due to a due process concern based on Mr. Bertucci's absence, or none (or all) of the above.  At any rate, Defendants have not pointed to any reliability issues with regard to the method in which the first test was prepared.  Thus, Defendants' argument as to the First Test Results' untrustworthiness is unpersuasive, and the undersigned admits Exhibit 76 as a public record pursuant to Fed. R. Evid. 803(8).

Turning to the Second Test Results, Defendants do not assert that the test was not conducted pursuant to a legally authorized investigation, nor would such an argument be availing since the record demonstrates that the Second Test was required by the criminal court in the proceedings against Mr. Bertucci.  In addition, Defendants do not appear to contest the trustworthiness of the report, either.  Although not specifically articulated, Defendants appear to argue that the report is not a "record or statement of a public office" because it was purportedly prepared by a chemist in a local university laboratory, albeit public (DE # 202 at 4).  As discussed in the earlier analysis of Rule 902(3), however, if Defendants were making this argument, the argument is misdirected because the record at issue is that of the criminal court that Mr. Bertucci obtained; he did not obtain the test results at issue directly from public university.  The question, thus, would turn back to whether the work of the university and its findings resulted "from a legally authorized investigation," and Defendants do not dispute that the university laboratory performed its analysis of the samples pursuant to an order of the criminal court in its investigation of Mr. Bertucci.  Defendants' remaining arguments regarding proper notice and expert disclosures are inapposite to the requirements of Rule 803(8).  Therefore, finding that Exhibit 76A satisfies the requirements of an exception to the hearsay rule pursuant to Rule 803(8), the undersigned admits the Exhibit.

Finally, the undersigned notes that many of Defendants' arguments as to the admissibility of Exhibits 76 and 76A actually go to the weight to be afforded the test results. The undersigned, of course, will weigh the evidence provided by these Exhibits in light of the fact that Plaintiffs have offered no expert to interpret the tests' scientific results, or the relationship of any scientific determinations to Venezuelan export regulations. The undersigned also considers, in reviewing Exhibit 76A, that Mr. Sabatino admitted to having no scientific expertise and further conceded that the test results did not state, upon his layman's reading of the results, that the cargo tested was Venezuelan national diesel. Finally, the undersigned considers the test results in light of any other evidence as to the cargo contents of the Sichem Challenge. Because such arguments by Defendants, however, do not go to the admissibility of the Exhibits, the undersigned's admission of the Exhibits relies on the analysis set forth above.

## IV.    CONCLUSION

Based upon the foregoing analysis, the undersigned has determined that Plaintiffs' Exhibits 76 and 76A, although of somewhat questionable probative value, satisfy the requirements of Federal Rules of Evidence 903(3) and 803(8), and are therefore admitted into evidence.

DONE AND ORDERED in chambers in Miami, Florida this 30th day of September, 2016.

_____
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished via CM/ECF:
All counsel of record